U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 SEP 20 PM 3:41

CLERK
BY PM
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ESTATE OF BRIENNA ROSE ANTONIO, )
)
    Plaintiff, )
)
v. )
)
MARK R. PEDERSEN, d/b/a HIGH COUNTRY )
TOURS, and MOUNT SNOW, LTD., )
)
    Defendants/Third-Party Plaintiffs, )
)
v. )    Case No. 5:11-cv-41
)
ANDREA MITCHELL, )
)
    Third-Party Defendant, )
)
ANDREA MITCHELL and CHARLES MITCHELL, )
)
    Counterclaimants, )
)
v. )
)
MARK R. PEDERSEN, d/b/a HIGH COUNTRY )
TOURS, and MOUNT SNOW, LTD., )
)
    Counterclaim Defendants. )

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS AND GRANTING IN PART COUNTERCLAIMANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Docs. 46, 59)

Presently pending before the court are two dispositive motions arising out of a February 20, 2010 snowmobile accident at or near the Mount Snow ski resort in West

Dover, Vermont which resulted in injuries to Andrea Mitchell and the death of her passenger, Brienna Rose Antonio.

Defendants Mark R. Pedersen, d/b/a High Country Tours ("HCT") and Mount Snow, Ltd. ("Mount Snow") move to dismiss the counterclaim filed by Andrea and Charles Mitchell (Doc. 46). They ask the court to conclude that a document entitled HCT Express Assumption of Risks and Forum Selection Agreement (the "HCT Release") executed by Ms. Mitchell bars Ms. Mitchell's negligence claims and her husband's derivative loss of consortium claim. HCT and Mount Snow further request the court to find that they have no obligation to indemnify Ms. Mitchell in the event she is found liable to the Estate of Brienna Rose Antonio (the "Estate") in a pending state court action. Finally, HCT and Mount Snow ask the court to dismiss the Mitchells' breach of warranty claims on the grounds that HCT and Mount Snow made no express warranties to the Mitchells, and Vermont recognizes no implied warranties in the circumstances of this case.

The Mitchells oppose the motion to dismiss. In turn, they have moved for partial summary judgment (Doc. 59), asking the court to conclude that the HCT Release does not bar their negligence claims, and if it does, that it is void because it is contrary to Vermont's public policy. HCT and Mount Snow oppose the motion for partial summary judgment.

The Estate, which is represented by Michael J. Harris, Esq., takes no position on the pending motions. HCT is represented by Richard J. Windish, Esq. Mount Snow is represented by Richard J. Windish, Esq. and Thomas P. Aicher, Esq. The Mitchells are represented by James W. Swift, Esq.

For the reasons set forth below, the court hereby GRANTS IN PART AND DENIES IN PART HCT and Mount Snow's motion to dismiss and GRANTS IN PART the Mitchells' motion for partial summary judgment, finding the remainder of the motion moot.

## I. Factual and Procedural Background.

On February 2, 2011, the Estate filed a complaint against HCT and Mount Snow, alleging they negligently caused the death of Ms. Antonio, while she was riding as a passenger on a snowmobile operated by Ms. Mitchell and are jointly and severally liable for any damages Ms. Antonio and the Estate suffered. In a separate action filed in state court, the Estate seeks damages from Ms. Mitchell for the death of Ms. Antonio.

In their Counterclaim, the Mitchells allege that: (1) HCT negligently caused injuries to Ms. Mitchell; (2) HCT breached express and implied warranties to Ms. Mitchell, causing her injuries; (3) Mount Snow, as a joint venturer with HCT, is jointly and severally liable for HCT's negligence; (4) HCT and Mount Snow are obligated to indemnify Ms, Mitchell for any damages awarded against her in the Estate's state court action; and (5) both HCT and Mount Snow are liable to Mr. Mitchell for loss of consortium.

The pending motions present a common nucleus of facts which serve as the factual basis for both the motion to dismiss and the motion for partial summary judgment. These facts pertain to the HCT Release. The remaining facts are treated as allegations and are derived from the Mitchells' Counterclaim.

On October 31, 2009, Mr. Pedersen and Mount Snow entered into an agreement entitled "AGREEMENT High Country Snowmobile Tours" (the "Agreement"). Pursuant to the Agreement, HCT operated snowmobile tours, which originated from Mount Snow's ski resort. On February 20, 2010, Ms. Mitchell and Ms. Antonio participated in a HCT snowmobile tour at or near the Mount Snow resort. Ms. Mitchell alleges that she had no prior experience operating a snowmobile. Ms. Antonio, who was then fifteen years old, road on the back of Ms. Mitchell's snowmobile.

Ms. Mitchell weighed approximately 234 pounds, and Ms. Antonio weighed approximately 120 pounds. HCT owned and provided the snowmobiles and helmets used on the tour. The Mitchells allege that the snowmobile that HCT provided Ms. Mitchell and Ms. Antonio was not adequate for the aggregate weight of the passengers and that it was defectively maintained.

3

Prior to beginning the tour, Ms. Mitchell executed the HCT Release, which states:

> I understand and accept that all forms of snowmobiling are hazardous with many inherent risks and resulting injuries or death. In consideration of being allowed to participate in the High Country Snowmobile Tours at the Mount Snow Ski Area I freely and expressly assume all risk of property damage, personal injury, or death which occurs on the Mount Snow Ski Area premises or other lands resulting from my participation in these snowmobile tours and the inherent risks of such activities as they are defined herein.
>
> I agree that these inherent risks include but are not limited to . . . surface and/or subsurface snow conditions as they may from time to time exist and may change or be affected by weather, or snowmobile usage; other conditions including . . . stumps and trees, stream beds[,] other natural objects and/or collisions with such objects . . . variations in steepness of terrain or variations in terrain.
>
> Therefore, in consideration of being allowed to participate in these tours I agree that I will not make any claim nor bring any suit for any damages, injury or death to myself, which results from any such inherent risks, as agreed they are defined herein. I also agree, that in the event that anyone makes a claim against High Country [and/or] Mount Snow Ltd. . . . as a result of my activities surrounding these tours, that I will indemnify and hold harmless High Country and Mount Snow from such claims.

(Doc. 46-1 at 1.) The parties agree that by virtue of the HCT Release, Ms. Mitchell released any claims she may have against HCT and Mount Snow arising out of the inherent risks of snowmobiling. They disagree as to whether the HCT Release also bars her negligence claims.

The tour set out at night, "under the then-existing snow conditions." (Doc. 43 at ¶ 17.) There was one guide, stationed at the front of the line of snowmobiles, who set the speed of and chose the location for the tour. Ms. Mitchell and Ms. Antonio rode the last snowmobile in the line. During the tour, Ms. Mitchell rounded an icy corner and the snowmobile she was operating slid off the trail and collided with a rock and a tree. As previously noted, Ms. Mitchell was injured, and Ms. Antonio died as a result of the collision. The Mitchells allege that Mr. Mitchell "has suffered a partial loss of the company, society, cooperation and affection of his wife." (Doc. 43 at ¶ 40.)

4

## II. Conclusions of Law and Analysis.

The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law to the substantive issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 927 F. Supp. 149, 153 (D. Vt. 1996).

### A. Standard of Review.

In deciding the pending motions, the court must apply divergent standards of review. Although in many cases, this may result in divergent outcomes, here, where both motions ask the court to construe a single release and determine whether it applies to the Mitchells' negligence claims, both standards of review yield the same outcome. With regard to the remaining grounds of Mount Snow's and HCT's motion to dismiss, the court will apply the standard of review for a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the court takes the complaint's "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The court need not credit "legal conclusions" in the complaint or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alteration omitted). In its analysis, the court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Consideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion[,]" *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), however such materials must be "'integral' to the complaint, it must be clear on the record that no dispute exists

regarding the authenticity or accuracy of the document[,]" and there must be "no material disputed issues of fact regarding the relevance of the document." *Id.* (citation omitted).[1]

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

With regard to the issues raised in the Mitchells' motion for partial summary judgment, summary judgment must be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding the motion, the trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and deny the motion if a rational juror could decide in favor of that party under the applicable law. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "There is no material fact issue only when reasonable minds cannot differ as to the import of the evidence before the court." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993).

### B. Whether the Mitchells Have Adequately Alleged That HCT and Mount Snow Were Negligent.

As a threshold matter, HCT and Mount Snow assert that the Mitchells' negligence claims should be dismissed because the allegations of negligence are an inadequate

---

[1] HCT and Mount Snow attached the HCT Release to their Third-Party Complaint against Ms. Mitchell, and the release is integral to the Mitchells' Counterclaim. There is no dispute regarding the authenticity or relevancy of the document. Accordingly, the HCT Release is properly before the court.

6

attempt to circumvent the language of the HCT Release. In essence, they argue that the Mitchells should not be able to plead around the HCT Release, framing their claims as based upon negligence, when in fact they arise out of the inherent risks of snowmobiling which are clearly covered by the HCT Release.[2]

The Mitchells counter that they allege negligence in good faith and provide sufficient factual allegations for their claim and thus they are entitled to select the tort theories on which they wish to proceed. The court agrees. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon."); *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 90 (2d Cir. 2010) (ruling "plaintiffs were entitled to construct their complaint" to allege "plain vanilla employment discrimination . . . regardless of the existence of [other theories.]"). This does not mean, however, that the HCT Release has no force and effect if the Mitchells characterize an inherent risk of snowmobiling as a negligence claim. It will be for a jury to decide whether the collision occurred because of the inherent risks of snowmobiling or whether it was caused by negligence, including Ms. Mitchell's negligence, that could and should have been avoided. *See Wells v. Vill. of Orleans, Inc.*, 315 A.2d 463, 467 (Vt. 1974) ("[P]roximate cause is a question of fact for the finder of fact to determine."); *see also Estate of Frant v. Haystack Group, Inc.*, 641 A.2d 765, 771 (Vt. 1994) (ruling that what constitutes an "obvious or necessary risk" of a sport covered

---

[2] HCT and Mount Snow further argue that the Mitchells must *establish* a prima facie claim of negligence to succeed on their motion for partial summary judgment. This would be true had the Mitchells requested the court to adjudicate that claim. Instead, they seek only a determination as to whether their negligence claims are barred by the HCT Release, and if so, they ask the court to find the HCT Release is void as against public policy. A motion for summary judgment requires the moving party to "identify[] each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Federal Rule of Civil Procedure 56 authorizes partial summary judgment that falls short of a final determination[.]" *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 231 (E.D.N.Y. 2003); *see also* 11-56 James Wm. Moore et al., *Moore's Federal Practice – Civil* ¶ 56.02[4] (3d ed. 2012) ("Prior to the 2010 amendment, the district courts did not agree on whether a party could seek summary judgment on an issue that would not, if granted, lead to the resolution of a claim or defense. The 2010 amendments make clear that this type of motion is proper."). The Mitchells' motion thus presents appropriate issues for summary judgment.

by Vermont's sports injury statute, is a question of fact to be decided by a jury); *Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 83 (D. Vt. 1993) ("The question of what dangers are obvious and necessary and therefore inhere in a sport is generally one for a jury to decide.").

HCT and Mount Snow also contend that the Mitchells' Counterclaim does not adequately allege negligence. The Counterclaim must include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not required to include "detailed factual allegations," *Twombly*, 550 U.S. at 555, however, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The court should dismiss only if the Counterclaim fails to state a "plausible claim for relief." *Id.* at 679.

"The elements of common law negligence are: (1) defendants owed a legal duty to protect plaintiff from an unreasonable risk of harm; (2) defendants breached that duty; (3) defendants' conduct was the proximate cause of plaintiff['s] injuries; and (4) plaintiff[] suffered actual damage." *Knight v. Rower*, 742 A.2d 1237, 1242 (Vt. 1999). "[T]he existence of a duty is primarily a question of law[,]" *O'Connell v. Killington, Ltd.*, 665 A.2d 39, 44 (Vt. 1995), which can be decided by the court. *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 9, 182 Vt. 157, 160, 933 A.2d 200, 203.

Count One of the Mitchells' Counterclaim is entitled "Negligence" and alleges that "Defendants advertise and market snowmobile tours as being open to the general public and to be available to patrons with no prior snowmobling experience." (Doc. 43 at ¶ 12.) The Counterclaim further alleges that HCT and Mount Snow were aware or should have been aware that Ms. Mitchell had no prior snowmobile experience although it does not specify the duties HCT and Mount Snow owed to her in light of this knowledge.

The Counterclaim further alleges that all actions taken by HCT and its employees were within the scope of their employment and agency and included: (1) "negligent failure to provide reasonably adequate instruction to the snowmobile tour participants for the equipment to be used and the conditions to be encountered on the tour;" (2) "negligently allowing Mitchell to operate a HCT snowmobile at night, under the existing

8

snow conditions, with an inexperienced minor passenger, at the rear of the line of five HCT snowmobiles without reasonably adequate training or supervision;" (3) "negligent failure to maintain a proper lookout for the HCT snowmobile tour participants;" (4) "negligent failure to maintain a proper speed for the HCT snowmobile tour group;" (5) "the negligence in allowing Mitchell and her passenger to occupy the same snowmobile when the combined weight exceeded the manufacturer's recommended weight limit;" (6) "their negligence in allowing a defectively maintained snowmobile to be operated by Mitchell;" (7) "their negligence in failing to reasonably supervise Mitchell's operation of the snowmobile during the tour;" (8) "their negligence in leading a tour at night, which included inexperienced operators, onto a hazardous trail which had become icy and dangerous;" (9) "their negligence in not having more than one tour guide;" (10) "their negligence in setting the speed of the line of snowmobiles too high for the icy conditions then and there prevailing;" and (11) "negligence in providing Mitchell with a snowmobile that was not adequate for the weight of the passengers or suitable for the conditions[.]" (Doc. 43 at 5-6, ¶ 22.) These allegations are sufficient to assert that HCT had a duty to adequately instruct and supervise the tour participants, maintain a proper lookout and speed on the tour, provide proper equipment suitable for its intended purpose, operate tours under safe and appropriate conditions, and maintain an appropriate number of tour guides. The Mitchells have further alleged that HCT's breach of its duties directly and proximately caused serious bodily injury, including multiple fractures and internal injuries to Ms. Mitchell, and caused Ms. Antonio's death.

At this stage in the proceedings, the court is obligated to assume the veracity of the Mitchells' well-pleaded factual allegations. Doing so, the court finds that the Mitchells' allegations state an adequate and plausible claim that HCT breached a duty of ordinary care to Ms. Mitchell in the operation of the snowmobile tour and that its negligence proximately caused Ms. Mitchell's injuries. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

9

### C. Whether the HCT Release Includes the Mitchells' Negligence Claims.

HCT and Mount Snow seek dismissal of the Mitchells' negligence claims, arguing that the HCT Release precludes any claim against HCT and Mount Snow for any injury arising from the contractually defined risks of snowmobiling. The Mitchells respond that the HCT Release does not bar their claims because they allege liability based on HCT's negligence, not based on the inherent risks of snowmobiling.

The enforceability of an exculpatory agreement generally turns "on whether the language of the agreement was sufficiently clear to reflect the parties' intent." *Dalury v. S-K-I, Ltd.*, 670 A.2d 795, 797 (Vt. 1995). Neither party contends the HCT Release is ambiguous. When a contract is unambiguous, its interpretation is a matter of law for the court. *See John A. Russell Corp. v. Bohlig*, 739 A.2d 1212, 1216 (Vt. 1999) ("Whether the contract is ambiguous is a matter of law to be decided by the court. If the court concludes the writing is unambiguous, it must declare the interpretation as a matter of law."). When presented with an unambiguous contract, Vermont law requires the court to determine the parties' intent from the language of the contract itself, read the contract as a whole, and enforce it in accordance with its terms. *See Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 190 Vt. 106, 108, 35 A.3d 113, 114 (holding that "when the contract language is unambiguous, we take these words to represent the parties' intent, and the plain meaning of this language governs its interpretation."); *see also Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 9, 177 Vt. 70, 75, 857 A.2d 263, 267 ("To be sure, we consider an agreement as a whole when examining its individual provisions, 'but do not read terms into the contract unless they arise by necessary implication.'") (quoting *Morrisseau v. Fayette*, 670 A.2d 820, 826 (Vt. 1995)).

An exculpatory clause is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act." *Black's Law Dictionary* 648 (9th ed. 2009). Courts "traditionally disfavor[] contractual exclusions of negligence liability," and, therefore, such provisions must "be construed strictly against the part[y] relying on them." *Colgan v. Agway, Inc.*, 553 A.2d 143, 145 (Vt. 1988). The party asserting the protection of a release bears the burden of establishing that it includes the claim in

question. *See Smith v. Gainer*, 571 A.2d 70, 72-73 (Vt. 1990) (ruling that defendant's assertion that release barred all claims was an affirmative defense which defendant must establish); *see also Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 266 (S.D.N.Y. 2005) (applying New York law and concluding that "a party claiming to be released from liability bears a heavy burden of proving that the alleged release contain an 'explicit, unequivocal statement of a present promise to release [that party] from liability.'") (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001)).

"The most effective way for parties to express an intention to release one party from liability flowing from that party's own negligence is to provide explicitly that claims based in negligence are included in the release." *Colgan*, 553 A.2d at 146; *see also Dalury*, 670 A.2d at 796-97 (finding language releasing defendant "from any and all liability for personal injury or property damage resulting from negligence," to be "quite clear in its terms."). However, "the failure to include in the agreement, expressly and literally, the word 'negligence' . . . does not preclude other language from having that effect." *Douglass v. Skiing Standards, Inc.*, 459 A.2d 97, 98 (Vt. 1983). Accordingly, an exculpatory provision may release claims of negligence even without direct reference to the term itself provided the language in question is sufficiently broad to unambiguously include negligence claims. *See, e.g., Provoncha v. Vt. Motocross Ass'n*, 2009 VT 29, ¶ 13, 185 Vt. 473, 479, 974 A.2d 1261, 1265 (enforcing an exculpatory provision to bar plaintiff's negligence claims because the provision broadly applied to "any loss, damage or injury . . . in anyway arising . . . from any cause what so ever."); *Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.*, 658 A.2d 31, 34 (Vt. 1995) (enforcing an agreement in which a landlord "waiv[ed] all right of recovery . . . arising out of any loss by fire or other similar casualty[,]" even when tenant's negligence caused the fire) (internal quotation marks omitted)); *Douglass*, 459 A.2d at 98 (barring plaintiff's negligence claims because plaintiff executed an agreement that included "significant exculpatory language," even though the agreement did not mention the term "negligence").

By executing the HCT Release, Ms. Mitchell acknowledged and assumed "all risk of . . . personal injury . . . resulting from [her] participation in these snowmobile tours and the inherent risk of such activities as they are defined herein." (Doc. 46-1 at 1.) She further agreed to "not make any claim nor bring any suit for any damages, injury or death to [herself], which results from any such inherent risks, as . . . defined herein." *Id.* The HCT Release does not mention the term "negligence," and thus its proper interpretation turns on whether it includes "words conveying a similar import." *Colgan*, 553 A.2d at 146 (citation and internal quotation marks omitted).

Neither the assumption of risk nor the release of liability in the HCT Release broadly apply to harm arising from any cause, but instead each are specifically limited to claims arising from the inherent risks of snowmobiling. Where a release sets forth the inherent risks of an activity, a liability waiver may be limited to those specified risks. In *Thompson v. Hi Tech Motor Sports, Inc.*, 2008 VT 15, 183 Vt. 218, 945 A.2d 368, the Vermont Supreme Court considered a release which acknowledged that motorcycle operation was inherently dangerous and waived "'any claim' resulting from the operation [of a motorcycle]." *Id.* at ¶ 19, 183 Vt. at 228-29, 945 A.2d at 376. Reading the release as a whole, the court determined that it waived only claims arising from the inherent dangers of operating a motorcycle, not claims arising from defendant's negligence. *See id.* at ¶¶ 17, 19, 183 Vt. at 227-29, 945 A.2d at 375-6 ("The opening paragraph of the release recites that operating a motorcycle is inherently dangerous and that operation may result in injury. The release then waives 'any claim' resulting from the operation. Based on this language, we conclude that the release waived claims for injuries resulting from dangers inherent to riding a motorcycle, not for those resulting from defendant's negligence.").[3] *Thompson* is applicable here and provides strong support for a conclusion

---

[3] Other jurisdictions have similarly found that liability waivers are limited to the inherent risks of an activity when those risks are specified therein. *See, e.g., Moore v. Harley Motors, Inc.*, 36 P.3d 628, 633 (Alaska 2001) (finding that liability release did not shield defendants from their own negligence because the "opening sentences refer only to unavoidable and inherent risks . . . and nothing in its ensuing language suggests an intent to release [defendants] from liability for acts of negligence unrelated to those inherent risks."); *Steele v. Mt. Hood Meadows Or., Ltd.*, 974

that the HCT Release, which contains analogous language, does not preclude claims arising from HCT's and Mount Snow's negligence.

To be effective, an agreement in which one party assumes risks arising from the other party's negligence "must . . . appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm." *Colgan*, 553 A.2d at 145 (quoting Restatement (Second) of Torts § 496B cmt. d (1965)). Here, no such intent is apparent, particularly when the HCT Release is "construed strictly against [HCT and Mount Snow.]" *Id.* ("Heightened judicial scrutiny of contractual disclaimers of negligence liability take the form in Vermont of the rule that because such disclaimers are exculpatory, they must be construed strictly against the parties relying on them."). Accordingly, if HCT's and Mount Snow's negligence caused Ms. Mitchell's accident and related injuries, then the HCT Release does not bar the Mitchells' negligence claims. *See Dalury*, 670 A.2d at 800 ("A [defendant's] own negligence . . . is neither an inherent risk nor an obvious and necessary one[.]"). Therefore, the court DENIES HCT's and Mount Snow's motion to dismiss with respect to Counts One and Three and GRANTS the Mitchells' motion for partial summary judgment with respect to the limited issue of whether the HCT Release bars the Mitchells' negligence claims, finding that it does not. This, in turn, moots the Mitchells' further argument that, to the extent the HCT Release bars negligence claims, it violates public policy.

### D. Whether the Mitchells' Implied Warranty Claim Should Be Dismissed.

Count Two of the Counterclaim asserts a breach of contract claim, alleging that HCT breached express and implied warranties to Ms. Mitchell. HCT and Mount Snow seek dismissal of the claim, arguing that the HCT Release -- their only conceivable contract with Ms. Mitchell -- does not contain any express or implied warranties. Neither the Mitchells' Counterclaim nor their opposition to the motion to dismiss identifies any express warranties made to them by either HCT or Mount Snow. The court thus treats

---

P.2d 794, 797 (Or. Ct. App. 1999) (concluding that a waiver of "any claims for personal injuries" could reasonably be understood to apply only to claims relating to the identified inherent risks of skiing, which did not include the ski resort's negligence).

this claim as abandoned. *See Scruggs v. Meriden Bd. of Educ.*, 2006 WL 2715388, at * 3 (D. Conn. Sept. 22, 2006).

As for their implied warranty claim, the Mitchells allege that, arising out of HCT's provision of a snowmobile tour, there is an implied warranty "that the services will be performed skillfully, carefully, diligently, and in a workmanlike manner." (Doc. 59 at 23.) In their Counterclaim, they describe the services in question as reasonably adequate training and supervision for tour participants, the provision of appropriate equipment,[4] and the selection of an appropriate trail.

The parties do not dispute that HCT offered to provide services, a snowmobile tour to Ms. Mitchell, and that Ms. Mitchell accepted the offer and paid the required consideration. The Mitchells thus claim Ms. Mitchell and HCT entered into a verbal contract for the provision of snowmobile services in addition to entering into the HCT Release. *See Bergeron v. Boyle*, 2003 VT 89, ¶ 19, 176 Vt. 78, 86, 838 A.2d 918, 926 ("Either a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract.") (quoting *Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc.*, 614 A.2d 812, 814 (Vt. 1992)). Neither party presents any evidence of the terms of this contract beyond the provision of and acceptance of a snowmobile tour for which payment was made.

The Mitchells argue that they have adequately alleged a breach of contract claim because Vermont may recognize an implied warranty in the parties' contract for the provision of services. The Vermont Supreme Court has recognized an implied warranty in conjunction with the provision of certain construction services.[5] As the Mitchells point

---

[4] The parties have not separately briefed whether the Mitchells have stated a breach of implied warranty claim with regard to the provision of the snowmobile, which is a "good" not a service. The court therefore does not address that claim as within the scope of the motion to dismiss.

[5] The Vermont Supreme Court has found an implied warranty where the services consist of construction of a new home, explaining that the builder or vendor "implicitly warrants to the buyer that the house is built in a good and workmanlike manner[.]" *Meadowbrook Condo. Ass'n v. Burlington Realty Corp.*, 565 A.2d 238, 240 (Vt. 1989) (citing *Rothberg v. Olenik*, 262 A.2d 461, 467 (1970)).

14

out, other jurisdictions have extended this warranty to other services and have concluded that "service contracts are accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011) (collecting cases); *see also Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E.2d 522, 531 (Mass. 2003) ("When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.") (citation and internal quotation marks omitted); *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990) ("[T]here is implied in every contract for work or services a duty to perform it skillfully, carefully, and diligently and in a workman-like manner[.]"); *Archibald v. Act III Arabians*, 755 S.W.2d 84, 85 (Tex. 1988) (recognizing an implied warranty in horse training because "[t]raining introduces new elements to enhance the horse's capabilities and personality and extinguishes undesirable traits.").

As the Mitchells further point out, courts generally do not dismiss claims presenting novel issues of law at the pleadings stage. *See Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition."); *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 1969)) (internal quotation marks omitted); *Sherman v. St. Barnabas Hosp.*, 535 F. Supp. 564, 571 (S.D.N.Y. 1982) (acknowledging that no successful claim had previously been made, the court found that in a "developing area of the law it would be imprudent at the pleading stage to dismiss categorically the possibility.").

The court acknowledges that it should tread with caution in dismissing a cause of action at the pleading stage based on a novel theory of the law. The Mitchells, however, do not cite any authority that has recognized an implied warranty in the provision of

15

recreational services. The Restatement (Second) of Contracts, which the Vermont Supreme Court has cited with approval,[6] recognizes no such warranty, and at least one court has specifically rejected it. *See Chang v. Camelback Ski Corp.*, 43 Pa. D. & C.4th 81, 88 (Pa. Com. Pleas 1999) (rejecting plaintiffs' request to extend the implied warranty of habitability in contracts between home builders and residential purchasers to agreements between ski areas and skiers, thereby creating an implied warranty that the ski slope would be "reasonably safe and fit for the purposes for which it was being used.").

Additionally, were the Vermont Supreme Court to recognize such an implied warranty, it would potentially undermine Vermont's sports injury statute which provides that "a person who takes part in any sport accepts as a matter of law dangers that inhere therein insofar as they are obvious and necessary." 12 V.S.A. § 1037.

A motion for failure to state a claim may be granted if a party fails to plead a claim that is cognizable under state law. *See Lieberman v. A&W Rests., Inc.*, 2003 WL 21252008, at *7 (D. Minn. May 28, 2003) (dismissing claim when, to accept it "would be to recognize a new cause of action[.]"); *see also Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1328, n.15 (M.D. Ala. 2004) ("The Court finds that the assessment of the merits of Plaintiffs' legal theory in this case can adequately be assessed without factual development, and consequently, dismissal of this action for Plaintiffs' failure to state a claim should not be rejected simply because Plaintiffs' theories are novel."). Here, in the absence of citation to any authority that would support the recognition of an implied warranty in the provision of recreational services, the court cannot conclude that the Mitchells have either stated a claim under existing Vermont law, or a claim that would likely be recognized by the Vermont Supreme Court in "extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see also Murphy v. Campbell*, 964 S.W.2d 265, 269 (Tex. 1997) (explaining that "an implied

---

[6] *See, e.g., Wells Fargo Bank Minn., N.A. v. Rouleau*, 2012 VT 19, ¶ 9, 46 A.3d 905, 908; *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 22, 190 Vt. 1, 12, 35 A.3d 100, 108.

warranty will not be judicially imposed unless there is a demonstrated need for it" and noting that "plaintiff may obtain full redress in an action for negligence[.]"). Dismissal for failure to state a claim is thus appropriate at this juncture. Count Two is DISMISSED IN PART WITHOUT PREJUDICE,[7] with leave to amend should the Mitchells provide support for their novel legal theory.

### E. Whether the Mitchells Have Stated a Claim for Implied Indemnification.

Finally, HCT and Mount Snow move to dismiss Count Four, claiming that implied indemnity can only accrue to a party who is not actively at fault. They assert that Ms. Mitchell cannot show that she did not have active fault. The Mitchells counter that the question of Ms. Mitchell's active fault is a question of fact and that Ms. Mitchell's active fault is but one of the factors that the court must consider.

The party asserting a claim of implied indemnification has the burden of establishing his or her entitlement to it. *See White v. Quechee Lakes Landowners' Ass'n*, 742 A.2d 734, 738 (Vt. 1999). Vermont law recognizes a right to implied indemnification where:

> a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe[.]

*Bardwell Motor Inn, Inc. v. Accavallo*, 381 A.2d 1061, 1062 (Vt. 1977). Because "indemnification shifts the *entire* loss from one party to another, one who has taken an active part in negligently injuring another is not entitled to indemnification from a second tortfeasor who also negligently caused the injury." *White*, 742 A.2d at 737 (internal citation omitted).

Under Vermont law, "there need not be a complete absence of fault on the part of the party seeking indemnity." *Corbeil v. Blood*, 2011 WL 2270403, at *6 (D. Vt. June 6, 2011) (citing *DiGregorio v. Champlain Valley Fruit Co.*, 255 A.2d 183, 186 (Vt. 1989)).

---

[7] As noted, any breach of implied warranty claim relating to the provision of a snowmobile to Ms. Mitchell is not dismissed.

17

Rather, a court may find a right to indemnification when the "plaintiffs' fault in its duty to the injured person was secondary to the initial negligence of the defendant." *DiGregorio*, 255 A.2d at 186. In general, "indemnity will be imputed only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another." *White*, 742 A.2d at 737.

Courts look at "the totality of circumstances" to determine whether a plaintiff is entitled to indemnification. *Savage v. Walker*, 2009 VT 8, ¶ 8, 185 Vt. 603, 606, 969 A.2d 121, 125 (citation and internal quotation marks omitted). Because the analysis requires an examination of the facts to determine the nature of the fault, the question of implied indemnity is generally not appropriate to decide on a motion to dismiss. *See Corbeil*, 2011 WL 2270403, at *6.

In this case, the allegations contained in the Mitchells' Counterclaim will not suffice because "allegations . . . do not, in themselves, prove anything about the true cause of the accident." *Chapman v. Sparta*, 702 A.2d 132, 134-35 (Vt. 1997). Although the Mitchells proffer additional facts in support of their partial motion for summary judgment, none of these facts would permit the court to determine, as a matter of law, whether Ms. Mitchell was actively at fault in causing the Estate's damages and, if so, whether her fault was significantly different in its nature and degree from the fault, if any, of either HCT or Mount Snow. *See White*, 742 A.2d at 737. Because, at this juncture, it would be impossible for the court to evaluate the "totality of the circumstances," the court cannot determine, as a matter of law, whether Ms. Mitchell is entitled to indemnification. For this reason, HCT and Mount Snow's motion to dismiss Count Four is DENIED.[8]

---

[8] While HCT and Mount Snow move to dismiss all of the Mitchells' claims, they do not address in their briefing Mr. Mitchell's claim for loss of consortium. Loss of consortium is a derivative claim, "and hence [is] only viable so long as [Ms. Mitchell's negligence] claims [are] good." *Griffin v. Garratt-Callahan Co.*, 74 F.3d 36, 37 (2d Cir. 1996). Because the court denies HCT and Mount Snow's motion to dismiss Ms. Mitchell's negligence claims, and because HCT and

18

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART HCT and Mount Snow's motion to dismiss (Doc. 46) Count Two of the Mitchells' Counterclaim and DISMISSES WITHOUT PREJUDICE that claim except insofar as it alleges a breach of implied warranty in conjunction with the provision of a snowmobile. The court DENIES all remaining aspects of HCT's and Mount Snow's motion to dismiss. The court GRANTS the Mitchells' motion for partial summary judgment (Doc. 59) on the issue of whether their negligence claims are included in the HCT Release, and denies the remainder of their motion as moot.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 20th day of September, 2012.

Christina Reiss, Chief Judge
United States District Court

---

Mount Snow present no independent arguments for dismissing Mr. Mitchell's loss of consortium claim, the court does not address it further.